IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 17, 2014 Session

## STATE OF TENNESSEE v. CRAIG PATRICK HEBERT

**Appeal from the Criminal Court for Davidson County**
**No. 2011C2451     J. Randall Wyatt, Jr., Judge**

_____

### No. M2012-02299-CCA-R3-CD - Filed December 22, 2014

_____

A Davidson County jury convicted the defendant, Craig Patrick Hebert, of assault, and the trial court sentenced him to six months, which was suspended and ordered to be served on probation. On appeal, the defendant contends that (1) the trial court erred in failing to charge the jury in accordance with Tennessee Pattern Jury Instruction – Criminal No. 42.23 (Duty to Preserve Evidence); and (2) that the evidence was insufficient to support his conviction. Following the denial of the motion for new trial, the defendant filed a petition for writ of error coram nobis, which was heard and denied. This court consolidated the appeal of the denial of his petition with the original appeal as of right in this cause. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

J. ROBERT CARTER, JR., SP. J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

David A. Collins (on appeal) and Jeffrey Thomas Daigle (at trial), Nashville, Tennessee, for the appellant, Craig Patrick Hebert.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# I. FACTUAL BACKGROUND

The defendant was indicted for a single count of aggravated assault arising out of an incident at Southern Thrift Store in Nashville, Tennessee on March 14, 2011.

At trial, the victim, Sandra Dodson, testified that she was the assistant manager at the store on the day in question. Ms. Dodson testified that store policy dictated that the doors be locked at closing time, which in this case was 6:30 p.m. She further testified that the defendant entered the store at closing time or shortly thereafter. Another store employee, Tyrese Buggs, told the defendant that the store was closed, to which the defendant responded, "not by my clock." After being repeatedly told that the store was closed, the defendant became angry and demanded that the employees call their district manager. Ms. Dodson testified that while she was on the telephone with her district manager, the defendant began circling her, cursing her, and threatening to sue the store. Upon a recommendation from her manager, she activated a silent alarm that summoned the police.

Ms. Dodson described feeling threatened by the defendant as a result of his continued yelling and cursing. The defendant left the store but returned and threatened Mr. Buggs with violence. After finally leaving the store, the defendant got into a pick-up truck to leave. Ms. Dodson testified that she went to the parking lot and attempted to write down the license number of the vehicle. She testified that at this time, the defendant told her that he would run over her if she attempted to obtain the tag number. The defendant began backing his truck toward Ms. Dodson, and she had to run out into a lane of traffic to avoid being struck by the defendant's truck. Ms. Dodson testified that she was scared because she was almost hit by a car traveling down the road.

Ms. Dodson testified that the events inside the store were captured by a surveillance camera but that it did not record sound. The events in the parking lot were not covered in the security video.

Tyrese Buggs testified that he was present when the defendant came in the store and would not leave. Mr. Buggs described the defendant as irate and testified that the defendant kept trying to goad him into coming into the parking lot to fight. Mr. Buggs observed Ms. Dodson's attempt to get the license number from the defendant's vehicle and witnessed the defendant backing up toward her in the truck. He testified that Ms. Dodson ran all the way into traffic in an effort to avoid the defendant's truck.

Detective Adam Weeks testified that approximately a week after the incident, he reviewed the security video with Ms. Dodson. He testified that it contained no sound and showed only the events inside the store. His understanding was that the offense in question

occurred in the parking lot. He spoke with the defendant at some point, who described being upset as a result of what he considered the "early closing" of the store and agreed everything began to escalate after that initial encounter. Detective Weeks testified that he did not obtain a copy of the video but thought that the store retained a copy. Following the testimony of Detective Weeks, the State rested.

The defendant testified that he arrived at the store and was told that it was closed. He agreed that there was an argument that escalated into shouting. The defendant testified that he left the store and that Ms. Dodson followed him out and went toward the rear of his vehicle. He denied that she was ever directly behind his truck or that he in any way forced her into the road. He generally disagreed with the accounts given by Mr. Buggs and Ms. Dodson.

The jury convicted the defendant of the lesser-included offense of misdemeanor assault, and the trial court sentenced the defendant to a six-month suspended sentence. This appeal followed.

In June 2012, new counsel was appointed to represent the defendant in his direct appeal. During the pendency of the direct appeal, counsel filed a petition for a writ of error coram nobis, alleging that following the defendant's trial, he learned that the foreman of the grand jury that issued the indictment against the defendant was a convicted felon, violating the defendant's constitutional right to a "qualified and lawful grand jury." The trial court denied the petition, and the appeal of that denial was consolidated with the direct appeal from the trial.

On appeal, the defendant contends that (1) "the evidence was insufficient to support his conviction," (2) "the trial court committed reversible error in failing to charge the jury pursuant to Tennessee Pattern Jury Instruction 42.23," and (3) "that the trial court erred in failing to grant the petition for writ of error coram nobis."

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for assault because of discrepancies between the testimonies of two of the State's witnesses, Ms. Dodson and Mr. Buggs. He maintains that these differences suggest that their testimony was fabricated. The State argues that the jury's verdict resolved any conflicts and that the evidence was sufficient to support a guilty verdict. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see also</u> Tenn. R. App. P. 13(e). It is well settled that the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

An assault occurs when one "intentionally or knowingly causes another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101 (a)(2). The proof at the trial, viewed in the light most favorable to the State, showed that when Ms. Dodson went behind the defendant's truck to write down his tag number, the defendant began backing his truck toward her, forcing her to run out into a lane of traffic. Ms. Dodson testified that she was afraid. Her account was substantiated by the testimony of Mr. Buggs.

The defendant argues that inconsistencies between these two witnesses were of such a degree as to negate the testimony. Questions concerning the credibility of witnesses and the weight and value to be afforded to the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). The jury accredited the testimony of the State's witnesses. This court will not reweigh or reevaluate the evidence, nor will it substitute its inferences for those drawn by the jury. <u>Id.</u> The burden is on the defendant to demonstrate that the evidence was insufficient. The evidence in this case is clearly sufficient to sustain the defendant's conviction for assault.

## B. FAILURE TO CHARGE PATTERN INSTRUCTION 42.23

The defendant claims that the trial court erred in failing to charge Pattern Criminal Instruction 42.23 which reads as follows:

T.P.I – CRIM. 42.23 Duty to preserve evidence

The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are an issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

The defendant asserts that such a charge was required because the proof at trial established that neither the police nor the store maintained a copy of the security video from inside the store. The State argues that the issue is waived as a result of the failure of the defense to request the charge at the trial. Tenn. R. App. P. (36)(b). The defendant urges this court to review this issue as plain error.

This court may address an issue as plain error only if each of the five specific factors are met:

(1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice.

State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010). The asserted "plain error must have been of such a great magnitude that it probably changed the outcome of the trial." State v. Adkisson, 899 S.W. 2d 626, 642 (Tenn. Crim. App. 1994).

The first step in the analysis would be to determine whether or not the State had a duty to preserve the evidence. Generally, the State should preserve all evidence discoverable under Tennessee Rule of Criminal Procedure 16. The difficulty in defining what must be maintained has been recognized by our supreme court and the United States Supreme Court:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must possess both an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

State v. Ferguson 2 S.W.3d 912, 917 (Tenn. 1999) (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

The trial court found that the recording was not relevant, noting that the camera recorded only what transpired inside the store and that the offense occurred in the parking lot. We agree. Accordingly, we conclude that it was not plain error to fail to charge Pattern Instruction 42.23.

## C. ERROR CORAM NOBIS

Finally, we will address the defendant's challenge to the trial court's denial of his petition for writ of error coram nobis. The writ of error coram nobis, which is an "extraordinary procedural remedy" that fills only a "slight gap into which few cases fall," is available to criminal defendants by statute in Tennessee. State v. Mixon, 983 S.W.2d 661, 662 (Tenn. 1999); T.C.A. § 40-26-101, *et seq.* It is known more for its denial than its approval. Mixon, 983 S.W.2d at 666.

The defendant complains that the indictment is void on its face because the grand jury foreman was a convicted felon and thus ineligible to serve on the grand jury. T.C.A. § 22-1-102. The State responds that the defendant waived the issue by not raising it prior to trial.

Tennessee Rule of Criminal Procedure 12(b)(2) requires that any objection to a defect in the indictment must be filed prior to trial but that "at any time while the case is pending, the court may hear a claim that the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense." See also State v. Lopez, 440 S.W.3d 601, 610 (Tenn. Crim. App. 2014). The constitutional requirements of an indictment are: (1) to give notice to the accused of the offense charged, (2) to provide the court with an adequate ground upon which a proper judgment may be entered; and (3) to provide the defendant with protection against double jeopardy. State v. Lindsey, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006).

The defendant does not contend that the indictment failed to provide notice, charge an offense, or protect him from double jeopardy. Lopez, 440 S.W.3d at 610. Instead, he questions whether the indictment, which was signed by a person who was statutorily ineligible to serve as grand jury foreperson, was "'so defective as to deprive the court of jurisdiction.'" Kenneth DeWayne Johnson v. State, No. M2013-02491-CCA-R3-PC, 2014 WL 3696268, at *3 (Tenn. Crim. App. at Nashville, July 24, 2014) (quoting Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998)). This court has recently examined this issue and held that "[t]he status of the grand jury foreman as a convicted felon does not relate to the power of the court to hear and decide a case." Lopez, 440 S.W.3d at 610; see Johnson,

No. M2013-02491-CCA-R3-PC, 2014 WL 3696268, at *3. Based upon the foregoing, the defendant has failed to establish that the court was without jurisdiction to hear the case. Lopez, 440 S.W.3d at 610. Therefore, he waived his challenge to the grand jury foreman by failing to raise the issue prior to trial. Id.

Moreover, "the historic doctrine of aider by verdict stands for the proposition that any defects in the indictment are cured if the jury reaches a verdict." Id. The jury in the instant case heard the evidence and returned a verdict, thereby curing any defects in the indictment. Lopez, 440 S.W.3d at 610. Thus, the trial court properly denied the petition for writ of error coram nobis.

### III.  CONCLUSION

After a review of the record and the applicable law, we affirm the judgment of the trial court.

_____
J. ROBERT CARTER, JR., SPECIAL JUDGE

-7-